UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGIL POPESCU,<br><br>                    Plaintiff,<br><br>     vs.<br><br><br><br>CITY OF SAN DIEGO, PARKING MANAGEMENT DIVISION and ROBERT PAGAN #8073,<br><br>                    Defendants. | CASE NO. 06CV1577-LAB (LSP)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO FILE AN AMENDED COMPLAINT; AND**<br><br>**ORDER TO SHOW CAUSE RE: CHANGE OF ADDRESS**<br><br>[Dkt. Nos. 20, 22] |

On August 8, 2006, Plaintiff filed his complaint, alleging his vehicles were singled out for parking tickets because he exercised his first amendment rights to express his political views. Defendants thereafter moved for summary judgment, and Plaintiff sought leave to file a second amended complaint.

On September 25, 2007, while Defendants' motion for summary judgment (the "MSJ") and Plaintiff's motion for leave to file a second amended complaint (the "Motion to Amend") were pending, Plaintiff submitted a pleading stating he had been arrested and was being held in jail on charges of stalking. Plaintiff stated he was unable to litigate while in the jail, and therefore requested a stay. The Court accepted this letter by discrepancy order, noting no proof of service was attached,

and ordering Plaintiff promptly to serve it on Defendants and file proofs of service. To date, Plaintiff has not done so, nor has he communicated with Magistrate Judge Papas' chambers regarding scheduled settlement conferences, which have twice been continued since Plaintiff gave notice of his arrest. Although Plaintiff's letter filed *nunc pro tunc* to September 25, 2007 gives a post office box address for the county jail, Plaintiff expresses uncertainty regarding how long he will stay in the jail and does not explain whether this is a temporary address or whether he can still receive mail sent to his address in the docket. Therefore, it does not appear Plaintiff has notified the Court of his current address as required under Civil Local Rule 83.11(b).

## I.     Motion for Summary Judgment

### A.     Summary of Allegations

Plaintiff has alleged that, since 1992 he has parked his Datsun pickup truck on a daily basis on his property located between Euclid Avenue and 47th Street in San Diego. (First Amended Complaint ("FAC") at 3:11–15.) He alleges "90% of the car was on Plaintiff's property and 10% on the alley which is 25 Feet wide." (*Id.* at 3:14–15.) He alleges the portion of his car that jutted into the alley was no more than ten inches. (*Id.* at 3:22–24.) He alleges no parking tickets were ever issued until October 1, 2005, when Officer Robert Pagan issued a ticket for a parking violation. (*Id.* at 3:16–18.) He says he wrote a letter explaining his position, and Defendant Parking Management Division answered his letter, stating among other things that "[a]n unattended vehicle violates this section even if it extends only partially into any alley." (*Id.* at 3:20:4–3.)

Plaintiff alleges the next incident occurred on November 16, 2005 at a nearby address on Estrella Avenue in San Diego, when he parked his Suburban in front of his garage for about 5 minutes, with his car protruding 1½ feet into the 18-foot alley. (FAC at 4:5–11, 4:17–18.) He says he was loading personal items and left the car doors open. (*Id.* at 4:7–8, 4:15–17.) Apparently while he left the car unattended, he says Officer Pagan again ticketed his car. (*Id.* at 4:16–27.) Plaintiff says "huge moving trucks" are regularly parked in the alley "all day long and [Officer]Pagan or anyone else, never gives them a ticket." (*Id.* at 5:25–28.) He says, as a result of the emotional stress caused by this incident, he suffered heart problems and had to stay in bed for several days. (*Id.* at 5:1–16.)

/ / /

Plaintiff alleges he was ticketed again on December 14, 2005 under circumstances similar to the first incident. (FAC at 6:1–3.) After he wrote a note threatening litigation and placed it on his dashboard, he said no more tickets were issued by Officer Pagan or anyone else.[1] (*Id.* at 6:4–17.)

Plaintiff alleges after each of these incidents he observed many of the other cars similarly parked and verified with their owners they had not been ticketed. (FAC at 6:25–7:4.)

Plaintiff believes he was being targeted by Defendant Pagan because of Plaintiff's vocal support (including signs on his garage and bumper stickers on his vehicles) for the Proposition A, a recent ballot measure intended to preserve a well-known cross on top of Mt. Soledad, within the City of San Diego. (Complaint at 7:13–26, 8:10–12.) He characterizes his expressions of support as both religious and political.

Plaintiff asserts claims under 42 U.S.C. § 1983 for alleged violations of his rights under the First, Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution. His First Amendment claim is based on allegations that Defendant Pagan retaliated against Plaintiff for exercising his right to express his religious and political views. His Eighth Amendment claim is based on allegations that the tickets were wrongly issued and therefore the fines were excessive, and that Defendant Pagan inflicted tremendous emotional distress on him. His Fourteenth Amendment claim is based on allegations of denial of equal protection. His Ninth Amendment claim contains no separate allegations, aside from an assertion of a Constitutional right to park, and is essentially a restatement of his First and Fourteenth Amendment claims.

Plaintiff has cited federal law, but not state law as the source of his claims. However, he has alleged Defendant Pagan's actions were outrageous and intended to inflict emotional distress on him. (FAC at 5:18–20.) He describes this as part of the harm giving rise to his Eighth Amendment claim (*id.* at 9:10–16), and as part of the harm caused by the alleged Fourteenth Amendment violations. (*Id.* at 10:15–28.) Defendants have not sought summary judgment on any state-law claims. Because Plaintiff avoided identifying any state law theories, the Court finds he has not raised any state-law claims clearly enough to put Defendants on notice. *See* Fed. R. Civ. P. 8.

---

[1] The FAC was filed on October 10, 2006. Plaintiff was apparently later ticketed by a different police officer, as discussed in more detail below.

Plaintiff alleges Defendants City of San Diego and Parking Management Division "were fully aware of Defendant . . . Pagan's outrageous conduct" and therefore they are equally liable. (FAC at 10:11–13.)

Defendants have moved for summary judgment, arguing principally that the Eighth and Ninth Amendments are inapplicable to Plaintiff's claims, that Plaintiff cannot establish that Defendant Pagan acted with a discriminatory intent or purpose, and that there is no factual basis for finding the other two Defendants liable under a *Monell* theory.

The parties cite section 86.10.3 of the San Diego Municipal Code as the relevant code provision governing parking in alleys.

### B. Legal Standards

Allegations asserted by *pro se* plaintiffs, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519–20 (1972). Thus where, as here, a plaintiff appears *in pro per* in a civil rights case, as here, the court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). Although the Court must construe the pleadings liberally, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

Federal Rule of Civil Procedure 56(c) empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

The movant is not required to produce evidence showing the absence of a genuine issue of material fact, nor is he required to offer evidence negating the non-movant's claims. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

1    The "mere existence of a scintilla of evidence" in support of the non-moving party's position is not sufficient to withstand summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegation or denials of his pleadings." (*Id.* at 256.) The non-movant must go beyond the pleadings to designate specific facts showing that there are genuine factual issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." (*Id.* at 250.) "When the non-moving party bears the burden of proof at trial, summary judgment is warranted if the non-movant fails to make a showing sufficient to establish the existence of an element essential to its case." *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694 (U.S. 1993) (citations, internal quotations, and alterations omitted).

   In considering the motion, the non-movant's evidence is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. Determinations regarding credibility, the weighing of evidence, and the drawing of legitimate inferences are jury functions, and are not appropriate for resolution by the court on a motion for summary judgment. *Id.*

   In reviewing the evidence, this Court restricts its inquiry to facts supported by the record. The Court does "not give credence to empty rhetoric . . . but credit[s] only those assertions that are supported by materials of evidentiary quality." *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 2 (1st Cir. 1999). In addition, the Court need not draw an unreasonable inference or accept conclusory allegations; "conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995). "In general, inadmissible hearsay evidence may not be considered on a motion for summary judgment." (*Id.* at 345 n.4.)

   **C.     Eighth Amendment Claims**

   The Eighth Amendment forbids excessive bail, excessive fines, or cruel and unusual punishments. As the Supreme Court has explained, the Eighth Amendment applies to those convicted of crimes. *Ingraham v. Wright*, 430 U.S. 651, 664 (1977).

   As Defendants point out, there is no evidence Plaintiff has been convicted of a crime. Furthermore, Plaintiff has submitted no evidence regarding a fine or other punishment imposed.

1 Plaintiff, however, has stated that he did not pay any of the parking tickets, because if he paid, then
2 he would admit guilt by paying the fine. (Opp'n to Mot. to Dismiss, filed Sept. 26, 2006, at 2:19–21.)
3 He does not, however, explain why he could not or did not show up for a hearing on the tickets. He
4 also avers that the Department of Motor Vehicles would not give him his car registration because he
5 did not pay two of the tickets. (*Id.* at 2:22–28.) He also says the City of San Diego refused to void
6 the tickets, (Opp'n to MSJ, at 2:25–28.), and the initial fine of $47 was doubled to $94 after 30 days
7 and then went to $104. (*Id.* at 8:3–9.)

Construing Plaintiff's pleadings liberally, it appears Plaintiff has refused to appear and contest his parking tickets. There is no suggestion proceedings are underway against Plaintiff in connection with these tickets. Neither party has briefed the legal effect of this, or whether this constitutes a conviction for Eighth Amendment purposes. However, because it appears fines of $104 per ticket have been imposed, or will soon be imposed, and because Plaintiff cannot register his car until they are paid, the Court will assume for purposes of ruling on the MSJ that the Eighth Amendment applies to Plaintiff. *See Vasudeva v. United States*, 214 F.3d 1155, 1161 (9th Cir. 2000) (assuming assessment was a fine for purposes of Eighth Amendment analysis, and concluding that assessment was not excessive) (citation omitted). A fine violates the Eighth amendment if it is "grossly disproportional to the gravity of the defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 337 (1998). As a matter of law, however, the Court holds these penalties do not amount to excessive fines or cruel and unusual punishment, particularly when coupled with failure to appear in court when required to do so.[2]

As discussed further in section E(1) below, Plaintiff's argument that the punishment was excessive because he did not violate the law cannot form the basis for a claim.

**D.      Ninth Amendment Claim**

The Ninth Amendment states, "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." The Ninth Amendment cannot, however, support any claim by Plaintiff. However, the Ninth Amendment "has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim."

---

[2] A fine of $47 for positioning one's car in a manner that barely intrudes into a wide alley is, in the Court's judgment, overly harsh. The amount of the fine seems less designed to punish or deter parking violators or protect public safety than to generate revenue for the municipality.

*Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986). This Amendment, therefore, does not support any claim by Plaintiff. *See id.* (dismissing civil rights claims based on Ninth Amendment). Contrary to Plaintiff's assertions (Opp'n to MSJ at 9:23–25), the Ninth Amendment does not encompass a right to park one's vehicle wherever one chooses.

### E. Remaining Claims Against Defendant Pagan

#### 1. Plaintiff's Asserted Innocence

Plaintiff contends he is not guilty at all of any parking violations. He does not, however, seek to have any judgment against him vacated; rather, the sole remedy he seeks is damages. San Diego Municipal Code § 8.10.3 provides "no person shall stop or stand any vehicle in an alley for a period of time longer than is necessary for the loading or unloading of passengers or materials." It further specifies the loading or unloading time shall not consume more than three minutes for passengers nor twenty minutes for materials. In addition, this section forbids stopping or standing any vehicle in an alley in such a manner that would prevent the passage of emergency vehicles.

As a preliminary matter, on the basis of his own admissions it appears Plaintiff violated this section on October 1 and December 14, 2005. He may have violated this section on November 16, 2005, depending upon whether the approximately five minute period he says he left his car unattended to load personal items was longer than necessary. The Parking Management Division's decision that cars may not extend even partially into an alley appears to be a reasonable interpretation of the language of § 86.10.3. Plaintiff's contention that emergency vehicles could pass appears to be irrelevant, because this provision forbids obstructing the path of emergency vehicles for any amount of time.

Whether Plaintiff was or is actually guilty, however, is irrelevant to his claims that he was specifically targeted because of the political views he expressed. *See United States v. Cortez*, 973 F.2d 764, 767 (9th Cir. 1992) (explaining vindictive or selective prosecution claims "do not hinge on the guilt or innocence of the defendant"). Therefore, even if Plaintiff has been adjudicated guilty, and could show this Court had jurisdiction to review the state court judgment, the Court would not reach this issue.

/ / /

### 2.     Allegations Defendant Pagan Targeted Plaintiff

Plaintiff has alleged Defendant Pagan specifically targeted him because Plaintiff displayed a political or religious sign and similar political and religious bumper stickers Defendant Pagan disagreed with. Plaintiff has pointed to evidence he displayed the sign and bumper stickers relating to Proposition A and the Mt. Soledad Cross that could be seen by someone passing by. (Popescu Decl. in Supp. of Opp'n to MSJ ("Popescu Decl.") at 2:24–28.)

Plaintiff has speculated that Defendant Pagan is hostile to his religious and political views, and in support of this principally argues that his surname is evidence of this. This does not constitute evidence. However, as Plaintiff explains, Proposition A was a hotly contested issue. If Plaintiff can show Defendant Pagan selected his car for ticketing and that the only meaningful difference between his car and others was his public advocacy of Proposition A, a jury could reasonably infer that Defendant Pagan's decision to ticket Plaintiff's vehicles and not others was based on an intent to retaliate or discriminate against Plaintiff.

Plaintiff has submitted a declaration stating that in the five-year period before he began to display the sign and bumper stickers, police officers and parking enforcement officers passed the Euclid Avenue property but never ticketed his car, even though it was parked in the same position. (Popescu Decl. at 2:4–14.) Plaintiff has produced evidence that on November 16, 2005, other cars parked so that they extended into the alley at least as much as his did were not ticketed. (*Id.* at 5:8–15; Ozorio Decl. in Supp. of Opp'n to MSJ at 2:10–21 (referring to Nov. 15 incident).) Plaintiff also submits evidence Defendant Pagan on at least one other occasion drove slowly through the alley but did not ticket cars that extended far into the alley. (Smith Decl. in Supp. of Opp'n to MSJ at 2:5–21.)

Plaintiff also includes in his FAC a number of factual assertions regarding Defendant Pagan's ticketing or non-ticketing of vehicles on other occasions and in other places. Because Plaintiff is proceeding *pro se* and because Plaintiff submitted his FAC (though not other pleadings) under penalty of perjury, alleged facts he would be competent to testify to can support his opposition to Defendants' motion for summary judgment. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). Plaintiff's FAC supplements the evidence in his opposition by stating that he has parked his car in the same position
/ / /

on the Euclid Avenue property since 1992 and never received a ticket until Defendant Pagan issued one on October 1, 2005. (FAC at 3:11-19.)

The FAC also states after each of the three tickets were issued, Plaintiff observed many cars parked on the alley in both locations, either partially or totally in the alley, and never saw any parking tickets on them. (*Id.* at 6:25–28.) He states he spoke to the vehicles' owners and learned none of them had found parking tickets on their vehicles. (*Id.* at 7:1–4.) While statements of the vehicles' owners (other than Gladys Ozorio, whose declaration was submitted) are inadmissible hearsay and therefore not properly considered, *Anheuser-Busch*, 69 F.3d at 345 n.4, Plaintiff's own statement that he looked for parking tickets but saw none is based on his personal knowledge and may therefore be admissible.

Plaintiff has also attempted to object to what he regards as Defendants' failure to cooperate in the discovery process. His objections, however, should have been raised with the Magistrate Judge, who was overseeing discovery. If he wished to object to any of the Magistrate Judge's rulings, his opportunity to do so is past. *See* Fed. R. Civ. P. 72(a) (requiring parties to file and serve objections to rulings by magistrate judges on nondispositive motions within ten days).

Defendants submit evidence that on October 1, 2005 Defendant Pagan issued another ticket to a car illegally parked in the alley (Dickel Decl. in Supp. of MSJ ("Dickel Decl.") at 2:4–7), and on December 14, 2005 Defendant Pagan issued parking tickets to two other vehicles in the alley at Euclid Avenue. (*Id.* at 2:16–21.) Defendants submit no evidence Defendant Pagan issued tickets to other vehicles in the alley at Estrella Avenue. (Id. at 8–11 (stating Plaintiff's Suburban was ticketed, and mentioning no other tickets).) Defendants also submit evidence that during the years 2005 and 2006, Defendant Pagan issued more than 21,000 parking tickets, over 10% of which were issued to vehicles illegally parked in alleys. (*Id.* at 3:1–4.)

Defendants' uncontested evidence demonstrates Defendant Pagan did issue many parking tickets to vehicles for illegal parking in alleys. Defendants' evidence does not, however, have any direct bearing on Defendant Pagan's ticketing of vehicles in the two alleys in question.

Defendants have submitted their own evidence suggesting on December 14, 2005, Defendant Pagan ticketed Plaintiff's car only after receiving a citizen's complaint. (Dickel Decl. in Supp. of MSJ

1  at 2:15–16.) Because this is a civil action, this may be admissible hearsay under the public records
2  exception. *See* Fed. R. Evid. 803(8)(B). Defendant Pagan's declaration states he does not remember
3  issuing the tickets and review of the City Treasurer's records of the tickets does not refresh his
4  memory. (Pagan Decl. in Supp. of MSJ at 2:18–20.)

5  The Court does not, however, weigh the evidence at this stage. *Anderson*, 477 U.S. at 255.
6  Rather, the Court accepts his evidence and draws all reasonable inferences in his favor. *Id.* Applying
7  this standard, the Court accepts Plaintiff's evidence that although he had parked in the same place for
8  years, he was not ticketed until he prominently posted a sign and bumper stickers expressing his
9  support for a controversial ballot measure. The Court also accepts Plaintiff's evidence that after each
10 incident he checked all vehicles in the same alley and, while many protruded into the alley at least as
11 far as his did, none had been ticketed. Plaintiff has presented no evidence Defendant Pagan was
12 hostile to the political or religious points of view he expressed. However, as Plaintiff points out,
13 Proposition A was a highly contentious political issue. The Court considers it a reasonable inference
14 that Plaintiff's overt expressions of his religious and political views were the only differences between
15 him and the owners of similarly-parked vehicles in the same area. The Court therefore concludes a
16 reasonable jury could conclude Defendant Pagan ticketed Plaintiff's vehicles and not other vehicles
17 simply because Plaintiff exercised his First Amendment rights.

18 Plaintiff therefore has presented evidence in support of his First Amendment retaliation and
19 Equal Protection claims sufficient to withstand summary judgment. *See Village of Willowbrook v.*
20 *Olech*, 528 U.S. 526, 564 (2000) (holding that plaintiff may maintain an equal protection claim where
21 he alleges he has been intentionally treated differently from others similarly situated and there is no
22 rational basis for the disparate treatment); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th
23 Cir. 1989) (holding that if decision to suspend permits was made because of plaintiffs' exercise of First
24 Amendment rights, they could maintain a § 1983 claim for violation of First Amendment rights).
25 Therefore, summary judgment on these claims against Defendant Pagan will be denied.

26     **F.**    **Claims Against the City of San Diego or Its Parking Management Division**
27 There is no *respondeat superior* or vicarious liability under § 1983, although a municipality
28 may be liable for violations pursuant to its policy or custom. *Monell v. N.Y.C. Dept. of Soc. Servs.*,

1  436 U.S. 658, 691 (1978).  Plaintiff has made general allegations that the City of San Diego or its
2  Parking Management Division has a policy of targeting citizens based on political or religious beliefs,
3  but he points to no evidence of this.  The allegations he sets forth in the FAC and his opposition to the
4  MSJ are conclusory and do not demonstrate Plaintiff has any personal knowledge of these facts.  In
5  his opposition to the MSJ, Plaintiff says he wishes to introduce evidence of other isolated instances
6  of unfair parking tickets being issued, but these do not suffice to demonstrate the existence of a policy
7  or practice. (Opp'n to MSJ at 13:1–22.)  Furthermore, Plaintiff has alleged Defendant Pagan acted on
8  the basis of his own political or anti-religious bigotry. (Popescu Decl. at 3:4–9)

9  The only other evidence Plaintiff provides is an additional parking ticket issued to Plaintiff on
10 March 10, 2007 by a different police officer, Officer Rosenbloom or Rosembloom, whom he surmises
11 is Jewish and therefore, he believes, "just lost his mind" after seeing the bumper sticker. (Popescu
12 Decl. at 4:6–17.)  Accepting Plaintiff's assertions as true, Officer Rosenbloom was not acting pursuant
13 to any City or Division policy, but out of his own personal motives.

## II.     Motion to Amend

Plaintiff seeks to amend solely to add a claim arising out of the incident on March 10, 2007 where Officer Rosenbloom ticketed his car, and to increase damages accordingly.

As noted, the City of San Diego or its Parking Management Division is being dismissed as a Defendant because there is no evidence Defendant Pagan acted on the basis of municipal policy or custom.  Similarly, Plaintiff has alleged Officer Rosenbloom acted on the basis of his own prejudices, rather than any municipal policy or custom.  Therefore, there is no relationship between the existing claim and the proposed claim.  The only common links are a similar fact pattern and the fact that Plaintiff is the alleged victim.  The proposed claim involves a different Defendant and a different occurrence.  There is therefore no provision for joining Officer Rosenbloom as a Defendant. *See* Fed. R. Civ. P. 20(a) (permitting joinder of defendants if claims arise out of a common transaction, occurrence, or series of transactions or occurrences, and a common question of fact or law will arise).  There appears to be no reason Plaintiff could not or should not bring this claim as a separate action.

/ / /

/ / /

**IV.     Plaintiff's Change of Address**

As noted above, Plaintiff filed but apparently did not serve a letter stating he was being held in the county jail on a charge of stalking. Since that time, Plaintiff has not filed proof of service as ordered, nor has he communicated with the Court in any way. It is unclear whether Plaintiff is still in jail, or whether he has been released. Settlement conferences have been re-set, and it appears Plaintiff has neglected his responsibilities under the Civil Local Rules regarding the upcoming pretrial conference currently on calendar for Monday, January 28, 2008 at 10:45 a.m. *See* Civil Local Rule 16.1(f). As provided in Civil Local Rule 83.1, failure of any party to comply with these rules or with any order of the Court may be ground for sanctions including dismissal of the action.

Because Plaintiff never filed proof of service as ordered, the Court will not consider his request for a stay. The Court will construe his letter, filed *nunc pro tunc* to September 25, 2007, as a notice.

**V.     Conclusion and Order**

For the reasons set forth above, Defendants' MSJ is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is denied as to Plaintiff's First and Fourteenth Amendment claims against Defendant Pagan, but granted as to all other claims.

Plaintiff's Motion to Amend is **DENIED**.

Plaintiff is hereby **ORDERED** to file a notice giving his current address (*i.e.*, the facility where he is being held, or the residence where he is living) and, if different, his mailing address. If he is still in jail, Plaintiff is **ORDERED** to include in this notice his expected trial date or release date. If Plaintiff has been released from jail, he is **ORDERED** to state the date he was released. Plaintiff must file and serve this notice no later than **twenty-one calendar days from the date this order is entered**. **If Plaintiff fails to file this notice as ordered within the time permitted, this action may be dismissed without prejudice without further notice to him, for failure to abide by the Civil Local Rules.**

The pretrial conference currently on calendar for Monday, January 28, 2008 at 10:45 a.m. is hereby **VACATED**.

/ / /

/ / /

The Clerk is directed to send a copy of this order to Plaintiff's address as stated in his letter filed *nunc pro tunc* to September 25, 2007 (Docket no. 30), as well as his address as it appears in the docket.

**IT IS SO ORDERED**.

DATED: January 24, 2008

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge